145 So. 497

## BISHOP v. STATE.

7 Div. 871.

Court of Appeals of Alabama.
June 21, 1932.

Rehearing Denied Nov. 1, 1932.

Miller & Miller, of Gadsden, for appellant.

268

■■■■■■■■■■■■■■■■■■■■■■■■

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, J.

The defendant, Charlie Bishop, and his family lived on a farm on Sand Mountain in Etowah county, and Ray Phillips, the party assaulted, and his family lived on a farm about one-eighth of a mile further up the mountain. Both of said farms were in a "Stock-law district," i. e., a district in which stock is not allowed to run at large.

The Phillips cows got out of the pasture and found their way to the premises of Bishop, the defendant, who impounded them in his lot. This, under the law, he had a right to do and to retain possession until paid such fees and damages as he might sustain to be ascertained by a proceeding before a justice of the peace, as provided by law. Code 1923, §§ 10216, 10219.

Phillips, his wife and son, tracked the cows, and when they saw that the cows had been impounded by Bishop in his lot they stopped, and then they saw Bishop come out of his house carrying a gun and accompanied by his daughter. They went to the barn, in the lot where the cows were. When Phillips saw Bishop with a gun, he sent his son back to the house for a gun and waited at a point about eighty yards from the barn until he got his gun. Phillips, his wife and son, then advanced towards the barn and lot gap, and demanded or asked Bishop and his daughter to turn the cows out. At this point the evidence is in conflict as to what took place and as to who began the difficulty. One thing is certain, there began quickly a general "free-for-all" fight. Miss Bishop drew and snapped a pistol at Mrs. Phillips. Mrs. Phillips grabbed Miss Bishop, knocked her down, sat on her, beat her up, and took the pistol away from her. Bishop began shooting at Phillips, and Phillips at Bishop. Both men were shot down and more or less seriously injured. Bad feelings had existed between the parties for quite some time, and Phillips had killed one of Bishop's sons and had been acquitted. There seems to be no doubt from the evidence that the crime of assault to murder was committed there at that time by one of the parties and perhaps by both.

■ Phillips had a right peaceably to go for his cows and to request their return to him. But he had no right to arm himself and undertake by intimidation and force to compel Bishop to release them. Bishop had a right to retain possession of the cows until repossessed by Phillips by and through the processes of the law, and being in the curtilage of his home, he had a right to arm himself against attack, to stand his ground, and to repel force with force. But he would have no right to use his home as a "sallyport," from which to bring on a difficulty with his enemy and then shoot him down. Both of these men had certain rights under the law, and those rights must be preserved and respected; but in the exercise of those rights by them more care than is usual between friends must be used in order to avoid the giving of offense and the arousing of anger. These men were enemies. It took little to inflame their blood, and the court aptly and correctly charged the jury that: "These two men more than any other men I know of, were under the duty to be courteous and respectful to each other." This statement did not invade the province of the jury, but was an instruction as to the law on the admitted facts.

The defendant reserved an exception to this statement of the court: "If they went down to the lot for the purpose of preventing him from taking the cattle, they would not be free from fault in bringing about the difficulty." We have carefully read the court's oral charge and do not find a statement in the charge to sustain the exception. The court very carefully defined the law of self-defense as applied to the facts of this case, in which we find no error.

■ While Ray Phillips, the injured party, was testifying as a witness, he was asked on cross-examination: "Did not you carry that gun to make them turn out those cows whether they wanted to or not?" The court sustained the state's objection to this question and the defendant excepted. This was error. The general rule is that on examination in chief the uncommunicated motives of a witness are inadmissible in evidence, but on cross-examination the defendant has the right to "sift" the testimony of the witness in reference to his acts and motives, to the end that the jury may be informed of his reasons for the movements "the witness had described on his direct examination." Patton v. State, 197 Ala. 180, 72 So. 401, 402. However, after reading and considering the entire record, we are of the opinion that the ruling of the court did not injuriously affect defendant's cause.

■ It follows from the above that the court did not err in permitting the solicitor to ask the defendant's witness Buena Bishop, on cross-examination, regarding a pistol she had in the fight: "Were you going hunting with it?" A foolish question, but the ruling was free from error.

■ The solicitor was allowed, over objection of defendant, to ask defendant Bishop while he was testifying as a witness: "Was there any damage done by the cattle?" This called for relevant evidence tending to prove the animus of Bishop in the entire transac-

tion and to explain his action relating to the bringing on of the difficulty.

 Charge No. 1 was covered by the oral charge of the court. The court charged the jury that the defendant had a right to carry his gun at the time and place and that charge covered refused charge 6. Refused charges 2, 4, and 8 were covered by the court's oral charge. Refused charge 11 had a tendency to confuse the issues and was properly refused.

We find no error in the record, and the judgment is affirmed.

Affirmed.